UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | |
|---|---|
| **DAWN C. POLK**<br><br>**Plaintiff,**<br><br>v.<br><br>**NATIONAL RAILROAD PASSENGER CORPORATION D/B/A AMTRAK, *et al*.,**<br><br>**Defendants.** | Case No. 1:21-cv-01740-LKG |

**NATIONAL RAILROAD PASSENGER CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND DEMAND AMOUNT AND SUPPLEMENT COMPLAINT**

Defendant, National Railroad Passenger Corporation d/b/a Amtrak (hereinafter, "Defendant" or "Amtrak"), by and through its undersigned counsel, submits this reply in further support of its Motion to Dismiss Plaintiff Dawn Polk's ("Plaintiff" or "Ms. Polk") claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and also opposes Plaintiff's Motion to Amend Demand Amount and to supplement her Complaint.

**I.    INTRODUCTION**

Ms. Polk responded to Amtrak's Motion to Dismiss by making serial filings that reconfirm that her claims are preempted by the Railway Labor Act ("RLA") and, even if they were not, they fail to state a claim upon which relief may be granted. Ms. Polk has made numerous filings reiterating her allegation that Amtrak treated her improperly by not offering her a second drug test after she provided an insufficient urine sample when initially tested. Numerous courts have held

that such a claim is preempted by the RLA. In addition, Amtrak's written Drug Testing Program does not provide for a second test by its express terms and the applicable federal regulations do not permit a second test. Further, Ms. Polk's allegation that her follow up drug testing breached a contract is baseless in addition to being preempted, as the "contract" at issue (her "Waiver Agreement") did not preclude the testing at issue. Ms. Polk's filings also reconfirm that her claim for emotional distress is preempted by the Federal Employers' Liability Act ("FELA"), does not meet the requirements to state a claim under FELA, and does not give rise to a viable cause of action under Maryland common law. As such, Amtrak respectfully requests that the Court dismiss Ms. Polk's Complaint in its entirety with prejudice.

## II.     PLAINTIFF'S FILINGS IN RESPONSE TO (OR POSSIBLY IN RESPONSE TO) AMTRAK'S OPENING BRIEF

### A.     ECF No. 35 – Correspondence

On October 26, 2021, Ms. Polk filed "correspondence" (ECF No. 35) that is comprised of (1) an unsigned Summons and non-executed return of service document relating to defendant Alton Lamontagne, and (2) four pages of narrative text. It is unclear if this document is intended to respond to Amtrak's Motion or if it is intended to relate to Ms. Polk's pending Motion for Default Judgment against Mr. Lamontagne (ECF No. 33).

In ECF No. 35, Ms. Polk argues (as in her Complaint and prior supplements) that Amtrak violated its Drug Testing Program by not giving her a second urine test after she failed to provide a sufficient sample, and that it violated her Waiver Agreement by "excessively" retesting her following reinstatement to her position.

Ms. Polk claims in her narrative to "wholeheartedly believe" that the decision not to send her for a second test "was racially motivated." ECF No. 35 at p. 3. However, she provides no facts that suggest racial animus. Rather, she complains it is "well known" that employees are given a

second test and that she has spoken to numerous employees (whose races she does not identify) who received second tests. *Id.* As to the purportedly "excessive" drug testing, Ms. Polk claims to have been told it was due to a data entry error. *Id.* at p. 4. Ms. Polk also reiterates her belief that Amtrak violated Federal Railroad Administration ("FRA") "hours of service" rules. *Id.* at pp. 5-6.[1]

### B.    ECF No. 36 – Correspondence

On October 26, 2021, Ms. Polk filed "correspondence" (ECF No. 36) that appears to be another attempt to supplement her Complaint. Alternatively, it may have been intended to respond in some way to Amtrak's Motion to Dismiss (ECF No. 34). The document is a one-page e-mail exchange between Ms. Polk an individual with an email address at the Department of Transportation, Patrick Corcoran, entitled "On A More Personal Note." Mr. Corcoran's email appears to be in response to a Freedom of Information Act ("FOIA") request by Ms. Polk for FRA "violation documents."

### C.    ECF No. 38 – Plaintiff's opposition to Amtrak's Motion to Dismiss and reply to Amtrak's Opposition to Plaintiff's Motion to Amend/Supplement

On October 28, 2021, Ms. Polk filed her opposition to Amtrak's Motion to Dismiss and reply to Amtrak's opposition to her Motion seeking to amend her demand amount. ECF No. 38. It includes a 14-page narrative in which Ms. Polk reiterates her prior allegations and 71 pages of exhibits. Ms. Polk again complains about not having received a second drug test after "failing" the first by providing an insufficient sample, discusses in detail the circumstances of her subsequent tests, and again complains about alleged "hours of service" violations. *Id.*, *passim*.

In this filing, Ms. Polk reconfirms that her claims against the Defendants are based on (1)

---

[1] As noted in Amtrak's initial brief, there is no private right of action under the Hours of Service Act. *See* 49 U.S.C. §§ 21103, 21303; *see also Capriotti v. Cosol. Rail Corp.*, 878 F. Supp. 429, 433 (N.D.N.Y. 1995).

her belief that the definition of the term "Refusal to Submit to a Test" in the Drug Testing Program sets out a "process" (rather than a definition) and her view that Amtrak failed to follow that "process" (*id.* at p. 2), and (2) her belief that she was retested beyond the scope of her Waiver Agreement (*id.* at pp. 6-7).

Ms. Polk includes no allegations about racial discrimination or harassment in this filing. *See generally id.* As for retaliation, Ms. Polk confirms that her claim is not based on race. Rather, she contends her "excessive" drug testing was in retaliation for complaining to Amtrak management about her drug testing. *Id.* at p. 11. Ms. Polk also submitted a copy of the "complaint" to which she refers. ECF No. 38-1 at pp. 1-2. It does not mention race. *See id.*

### D.   ECF No. 40 – Plaintiff's Supplement to ECF No. 38

On October 29, 2021, Plaintiff filed a supplement to her opposition and reply, styled as a "Motion to Dismiss Defendant's Motion to Dismiss." ECF No. 40. In this document, Ms. Polk reiterates some of her prior allegations and adds nothing new of substance. *Id.*

### E.   ECF No. 41 - Plaintiff's Additional Supplement to ECF No. 38

On November 2, 2021, Plaintiff filed a second supplement to her opposition and reply, focusing on allegations relating to individual Defendant Andrew Collins. The bulk of this filing is comprised of previously filed materials. ECF No. 41-2 (labeled as "resubmission"); ECF No. 41-4 (same). In ECF No. 41, Ms. Polk confirms that her claim against Mr. Collins is focused on his alleged "ignorance" of FRA hours of service rules, the terms of Amtrak's Drug Testing Program, and Ms. Polk's waiver agreement, which she claims "contributed" to a "breach of her agreement and company policies." *Id.* at pp. 1-2.

### F.   ECF No. 45 – Plaintiff's Supplement to ECF No. 38

On November 8, 2021, Plaintiff submitted a supplement to her opposition to Amtrak's Motion to Dismiss. ECF. 45. Therein, Plaintiff complains that Amtrak did not quote the provision

of the Drug Testing Program upon which she bases her claim (although Amtrak did provide a cite to that language). *See id.* at p. 2.

  **G.**  **ECF No. 47 – Plaintiff's Additional Supplement to ECF No. 1**

On November 8, 2021, Plaintiff filed a fifth supplement to her Complaint, without leave of Court. This Supplement encloses three Public Law Board ("PLB") decisions (ECF Nos. 47-1-47-3). Plaintiff suggests that these decisions involved circumstances similar to those underlying this lawsuit.

**III.**  **ARGUMENT**

  **A.**  **Plaintiff's Filings Confirm that Her Claims are Preempted by the Railway Labor Act.**

In her many filings, Ms. Polk makes it abundantly clear that her claims are focused entirely on challenging the process by which she was drug tested, both initially and following her execution of the Waiver Agreement. Drug testing and disciplinary actions stemming from drug testing are not only the subject of Amtrak's Drug Testing Program (ECF No. 34-2, Ex. B), but also the terms of the applicable collective bargaining agreement ("CBA") that are expressly incorporated into the Program (*id.* at Section C ("Drug and Alcohol Testing Procedures") at §§ 3.0 and 5.0), the disciplinary and drug testing provisions set forth in the CBA itself (ECF No. 34-2 at Ex. A), and extensive federal regulations regarding drug testing of railroad employees (*see* C.F.R. Title 49, Subtitle B, Chapter II). Furthermore, the federal drug testing regulations expressly defer to the procedural rights available to employees under a CBA and the RLA. S*ee* 49 C.F.R. § 219.104(c)(5).

 A claim is preempted/precluded by the RLA when a court will be required to interpret the terms of a CBA or industry norms (even if not expressed in the CBA) in order to resolve it. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261-262 (1994); *Fry v. Airline Pilots Ass'n Intern.*,

88 F.3d 831, 836 (10th Cir. 1996); *Milam v. Herrlin*, 819 F. Supp. 295, 305 (S.D.N.Y. 1993). Here, the two "contracts" Ms. Polk seeks to enforce are inextricably intertwined with provisions of the CBA (in addition to extensive federal regulations). The Drug Testing Program expressly references the terms of the CBA and federal drug testing regulations for railroad employees, and it requires that Amtrak follow the CBA in the event that an employee, like Ms. Polk, appears to be in violation of the Program. The Waiver Agreement itself is a direct product of the CBA and governed by its terms. In order for the Court to resolve the question of whether either document constituted an individual contract between Ms. Polk and Amtrak and, if so, whether either was breached, the Court will need to interpret the terms of CBA itself. In addition, should the Court interpret the Drug Testing Program in the manner that Ms. Polk asks it (*i.e.*, as requiring Amtrak to offer her a second drug test after she provided an insufficient sample), the Court would have to ignore the federal railroad drug testing regulations upon which Amtrak's Drug Testing Program is premised, which *do not* permit a second test when an employee provides an insufficient urine sample. *See* 49 C.F.R. § 40.193. This regulation sets forth the *exact* process described in the Drug Testing Program (ECF No. 34-2, Ex. B at Section C, § 2.6). Ms. Polk's claims are premised on her belief that – contrary to the express language of the regulations and the Drug Testing Program – Amtrak was required to offer her a second test. Given that federal law does not require a railroad to provide an employee a second drug test, this Court cannot acquiesce to her desire.

As discussed in Amtrak's opening brief, for these reasons, courts in this jurisdiction and elsewhere hold that challenges to drug testing of a union railroad employee are preempted/precluded. *See*, *e.g.*, *Milam v. Herrlin*, 819 F. Supp. 295, 305 (S.D.N.Y. 1993) (claims held preempted by the RLA where plaintiff, who initially failed a urine test, was subject to drug testing per a CBA, employer's drug testing policy, federal regulations, and a waiver agreement

recognized in the railroad industry and by the FRA); *Carson v. S. Ry. Co.*, 494 F. Supp. 1104, 1112 (D.S.C. 1979) (plaintiff's claims arising out of how employer handled a suspected Rule G drug/alcohol violation were preempted by the RLA); *Connor v. LoveyBug, LLC*, Civil No. 1:20-cv-00425 (RDA/IDD), 2021 WL 2915400, at *6 (E.D. Va. July 12, 2021) (state law negligence claim arising from allegation of improper alcohol testing pursuant to a carrier's drug and alcohol testing protocol was preempted by the RLA).

As to Ms. Polk's Title VII claims, as discussed at length in Amtrak's opening brief, a claim based on a federal statute is precluded if resolving it would require interpretation of a CBA or the industry practices upon which it is premised. *See Lee v. Norfolk S. Ry. Co.*, 912 F. Supp. 2d 375, 377-80 (W.D.N.C. 2012) (African American employee's claims that he was treated less favorably than Caucasian employees with respect to training opportunities and discipline were precluded because interpretation of the CBA was required); *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 658 (7th Cir. 2001); *Monroe v. Missouri Pac. R.R. Co*., 115 F.3d 514, 518 (7th Cir. 1997) (federal/state law claims were preempted because any assessment of the employer's motivation for his termination required interpretation of a CBA); *Reece v. Houston Lighting & Power Co.*, 79 F.3d 485, 487 (5th Cir. 1996) (state law race discrimination claim was preempted because the CBA would have to be interpreted to show that the employer's stated reason for its conduct was pretextual). Here, Amtrak's legitimate, non-discriminatory business reasons for its decisions will be premised on the terms of the CBA (and the federal regulations) as incorporated into the Drug Testing Program and Waiver Agreement, making Plaintiff's Title VII claims precluded by the RLA.

Finally, Ms. Polk's latest attempt to supplement her Complaint demonstrates that her claims are unquestionably preempted by the RLA. As set forth in Amtrak's initial brief (ECF No.

34), per the RLA, arbitrable matters are referred to a National Railroad Adjustment Board.[2] Ms. Polk has submitted three arbitration decisions that confirm the PLB has jurisdiction over claims regarding Amtrak's Drug Testing Program. *See* ECF No. 47-1 at p. 1, ECF No. 47-2 at p, 4, and ECF No. 47-3 at p. 1 (each acknowledging that they have jurisdiction). In addition, Ms. Polk's submission demonstrates how the grievance mechanism of the CBA, which is expressly referenced in the Drug Testing Program, is to be followed and results in a claim being submitted to a PLB for resolution. *See* ECF No. 47-2 at p. 4 (explaining process followed in that case leading to PLB review); ECF No. 34-2 at Section C, §§ 3.0, 5.0 (Drug Testing Program references to union CBA disciplinary procedures); ECF No. 34-2 at Rule 25 (SMART CBA disciplinary rule).

Furthermore, Ms. Polk's request for this Court to assess her claim by comparing it to claims resolved via the proper PLB mechanism is improper. The purpose of the RLA is to have industry experts, not judges, resolve claims. *Consol. Rail Corp. (Conrail) v. Ry. Labor Exec. Ass'n*, 491 U.S. 299, 310, 109 S.Ct. 2477 (1989). "[J]udicial incursion into what the RLA defines as the exclusive province of the RLA arbitration boards . . . would 'lead to evisceration of the grievance and arbitration procedures provided by the RLA.'" *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 664 (7th Cir. 2001). And once a PLB resolves a claim, a court has very little power to review the PLB's decision. Indeed, the judicial scope of review of an PLB's decision is "among the narrowest known to the law." *Union Pacific R. Co. v. Sheehan*, 439 U.S. 89, 91 (1978). A court may overturn a PLB decision only if it fails to comply with the RLA, exceeds its jurisdiction, or its decision is tainted by fraud or corruption. 45 U.S.C. § 153, First (q). This Court does not have the jurisdiction to bypass the process mandated by the RLA and take the place of a PLB. *See United Transp. Union*

---

[2] Although the RLA uses the term "special board of adjustment," the rail industry generally refers to this special board of adjustment as a "Public Law Board." RAILWAY LABOR ACT, Fourth Ed., Ch. 7.V.E at n.138; *see also* 29 C.F.R. Part 1207.1.

*v. South Carolina Pub. Ry. Comm'n*, 130 F.3d 627, 627-28 (4th Cir. 1997) (RLA preemption/preclusion is jurisdictional).

      **B.**      **Even if Not Preempted, Plaintiff's Breach of Contract Claims Must Be Dismissed for Failure to State a Claim.**

Ms. Polk's submissions in opposition to Amtrak's Motion to Dismiss do nothing to save her breach of contract claims (even if they are not preempted). Amtrak rests on its opening arguments regarding why Ms. Polk fails to state a claim for breach of contract under Maryland common law and will not repeat them here. Ms. Polk's submissions in response have added nothing that alters the conclusion that she cannot state a claim.

      **C.**      **Plaintiff's Filings Confirm that, Even if Not Precluded, Her Title VII Claims Must Be Dismissed.**

Ms. Polk's submissions in response to Amtrak's Motion to Dismiss do not mention race at all. However, as discussed above, she does state in a document appended to a proof of service form that she believes the decision not to send her for a second drug test was "racially motivated." *See* ECF No. 35 at p. 3. Ms. Polk's allegation is conclusory and unsupported by well-plead facts.[3] Conclusory allegations are insufficient to state a claim under the basic pleading standard. *See Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). After *numerous* attempts to explain herself, Ms. Polk offers no facts to support a claim of racial discrimination or harassment under Title VII.

In addition, Ms. Polk's own allegations defeat her Title VII retaliation claim. Specifically, she has now placed before the Court the exact language of the complaints she contends prompted Amtrak's alleged retaliation (*see* ECF No. 28 at pp. 75-76 and ECF No. 38-1 at pp. 1-4), and they do not mention race. To prevail on a claim for retaliation in violation of Title VII, a plaintiff must

---

[3] It is also contrary to the plain language of the Drug Testing Program and federal regulations discussed above.

have engaged in protected activity under Title VII, which in Ms. Polk's case means she must have made a complaint relating to her race. *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 604 (D. Md. 2018) ("to qualify as protected activity, an employee's complaints must still communicate 'a belief that the employer has engaged in ... a form of employment discrimination' based on a protected class"); *see also* 42 U.S.C. § 2000e-3(a). Ms. Polk's own allegations show that her complaints did not relate to race or any other characteristic protected by Title VII; therefore, her Title VII retaliation claim is not viable and must be dismissed.

### D. Plaintiff's Claim for Emotional Distress Must Be Dismissed.

In its opening brief, Amtrak explained at length why Ms. Polk's claim for intentional infliction of emotional distress is preempted by FELA, would fail even if she had brought her claim under FELA (which she did not), and also fails to state a claim under Maryland common law. Nothing in any of Ms. Polk's recent filings alters the analysis. Rather, Ms. Polk simply reiterates her prior allegations, confirming that her claim must be dismissed as preempted and/or for failure to state a claim.[4]

---

[4] Ms. Polk's filings reference a prior workplace injury. *See*, *e.g.*, ECF No. 1 at p. 6. That injury is not the basis of her current claim for emotional distress, which is premised on the alleged "excessive" drug testing. *See* ECF No. 1 at p. 10; Doc. 24 at p. 6. Ms. Polk currently has two FELA lawsuits pending against Amtrak for emotional distress relating to alleged workplace injuries. *Polk v. Nat'l R.R. Passenger Corp.*, No. 24-c-19-005581 OT (Baltimore Cty. Cir. Ct. Nov. 4, 2019); *Polk v. Nat'l R.R. Passenger Corp.*, No. 2020 CA 004637 B (D.C. Sup. Ct. Nov. 8, 2020).

## IV. CONCLUSION

For the foregoing reasons, Amtrak respectfully requests that the Court enter an Order denying Plaintiff's Motion to Amend Demand Amount and supplement her Complaint and dismissing Plaintiff's Complaint in its entirety with prejudice.

Dated: November 11, 2021

*/s/ Rosa T. Goodman*
Alison N. Davis (MD Bar No. 27987)
andavis@littler.com
Rosa T. Goodman (MD Bar No. 20739)
rtgoodman@littler.com
815 Connecticut Avenue, NW
Suite 400
Washington, DC 20006-4046
202.842.3400 (Telephone)
202.842.0011 (Facsimile)

*Counsel for Defendant National Railroad Passenger Corporation*