**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| DAWN C. POLK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 21-cv-01740-LKG |
| v. ) | |
| ) | Dated: June 27, 2022 |
| AMTRAK NATIONAL RAILROAD ) | |
| PASSENGER CORPORATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

Plaintiff *pro se,* Dawn C. Polk, brings this civil action alleging breach of contract, tort, and employment discrimination claims against defendants, Amtrak National Railroad Passenger Corporation ("Amtrak"), Andrew Collins, Alton Lamontagne, Curtis Stencil, and Tracey Armstrong, pursuant to state law and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. *See generally* Compl., ECF No. 1.  Defendants have moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) and (6).[1]  *See* Def. Mot., ECF No. 34.  Plaintiff has also moved for summary judgment in her favor, pursuant to Fed. R. Civ. P. 56.  *See* Pl. Mot. Summ. J., ECF No. 56.  In addition, plaintiff has moved for leave to amend the demand in the complaint.  *See* Pl. Mot. Amend, ECF No. 24.

These motions have been fully briefed*.  See generally* Def. Mot.; Pl. Resp., ECF No. 38; Def. Reply., ECF No. 48; Def. Resp., ECF No. 58.  No hearing is necessary to resolve these motions.  L.R. 105.6 (D. Md. 2021).  For the reasons set forth below, the Court:  (1) **GRANTS**

---

[1] On November 4, 2021, defendant Lamontagne voluntarily accepted service of process.  *See* ECF No. 44 at 1.  To date, plaintiff has not served defendants Collins, Stencil or Armstrong.  *See* Def. Mem. at 3 n.2. While defendant Amtrak is the only defendant that has moved to dismiss this matter, the Court construes Amtrak's motion as filed on behalf of all defendants, as the other named defendants are all Amtrak employees.  *See* Compl. at 2-3.

1

defendants' motion to dismiss; (2) **DENIES** plaintiff's motion for leave to amend the complaint; (3) **DENIES-as-MOOT** plaintiff's motion for summary judgment; and (4) **DISMISSES** the complaint.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.   Factual Background

Plaintiff *pro se,* Dawn Polk, brings this civil action alleging breach of contract, tort, and employment discrimination claims against defendant Amtrak and several individually named defendants, pursuant to state law and Title VII of the Civil Rights Act of 1964. *See generally* Compl.

Plaintiff is African American and a former Amtrak employee. *See id.* at 5. Defendant Amtrak is a passenger railroad service that provides rail service in the contiguous United States and was plaintiff's employer during the time period relevant to this matter. *See* Def. Mem., ECF No. 34-1 at 2. Defendant Andrew Collins is the Director of Employee Relations for Amtrak and defendant Alton Lamontagne is the road foreman manager for Amtrak. *See generally* Compl. at 2. Defendants Curtis Stencil and Tracey Armstrong are trainmaster managers for Amtrak. *Id.* at 3.

<u>Plaintiff's Amtrak Employment</u>

As background, plaintiff was an employee of Amtrak and a member of the Sheet Metal Air Rail and Transportation Workers Conductors NEC ("SMART") labor union. *See id.* at 9 (referencing plaintiff's union status); *see also* Compl. Ex. 1 at 1, ECF No. 1-1 (email string between Amtrak and SMART regarding plaintiff). Plaintiff's employment was governed by a collective bargaining agreement ("CBA") between Amtrak and SMART. *See generally* Def. Mot. Ex. 1, Decl. of Eric Dartt ("Dartt Decl.") at ¶ 2, ECF No. 34-2.

After plaintiff was injured at the workplace in December 2018, she took a "return-to-

---

[2] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl."); the supplements to the complaint ("Suppl. to Compl."); plaintiff's response in opposition to defendants' motion to dismiss ("Pl. Resp"); plaintiff's supplemental responses in opposition to defendants' motion to dismiss ("Pl. Addl. Suppl. Resp."); defendants' motion to dismiss ("Def. Mot."), and memorandum in support thereof. ("Def. Mem.").

work" drug test on March 25, 2019. *See* Compl. at 6. Amtrak determined that plaintiff failed to produce a sufficient urine sample for this test as authorized under the Amtrak Drug and Alcohol-Free Workplace Program.[3] *See id.*; *see also* Compl. Ex. 1 at 3. And so, Amtrak temporarily terminated plaintiff's employment for six weeks under Amtrak's rules for drug testing violations in April 2019. *See* Compl. at 6.

On April 19, 2019, plaintiff was reinstated to work under a waiver of investigatory hearing agreement (the "Waiver Agreement") by and between SMART and Amtrak. *See* Compl. Ex. 1 at 3-4. Under the terms of the Waiver Agreement, plaintiff agreed to work with a substance abuse professional and to undergo periodic follow-up drug testing. *See* Pl. Resp. at 15. Thereafter, plaintiff took another return-to-work drug test on April 30, 2019. *See* 2d Suppl. to Compl. at 2, ECF No. 32.

Plaintiff alleges that she was improperly subjected to several additional drug tests after the Waiver Agreement expired. *See id.* at 5 (alleging that the unannounced follow-up drug tests were accompanied by willful violations of hours of service as "management Andrew Collins made me stay pass the allotted 12 hours on duty causing a willful violation of hours of service in order to provide a urine specimen"). On February 4, 2021, plaintiff filed an Amtrak Dispute Resolution Office ("DRO") report challenging the drug tests. *See* Pl. Resp. at 11; *see also* Pl. Addl. Supp. Resp. at 1, ECF No. 41-2. But, this report was not resolved. *See* Pl. Resp. at 14.

Plaintiff retired from Amtrak on disability on May 1, 2021. *See* Compl. at 13. Thereafter, on May 10, 2021, plaintiff received a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"), after she filed an unsuccessful EEO complaint alleging employment discrimination. *See* Compl. Ex. 1 at 10.

Plaintiff's Allegations

Plaintiff's complaint is difficult to follow. But, it appears that the gravamen of plaintiff's complaint is that she alleges Amtrak discriminated against her, and improperly terminated her employment, by incorrectly implementing Amtrak's Drug and Alcohol-Free Workplace

---

[3] Amtrak's Drug and Alcohol-Free Workplace Policy provides the steps that employees should take following a drug test violation and requires that all disciplinary action must comply with the requirements of the applicable collective bargaining agreement." *See* Dartt Decl. Ex. B at Section C § 5.0.

Program.  *See* Compl. at 7.  Specifically, plaintiff alleges:  (1) breach of contract; (2) intentional infliction of emotional distress; and (3) employment discrimination claims in the complaint.  *See id.* at 7-9.

With regards to her breach of contract claims, plaintiff alleges that Amtrak violated the Amtrak Drug and Alcohol-Free Workplace Policy, by refusing to grant her a second drug test after she failed a return-to-work drug test in 2019.  *See* 2d Suppl. to Compl. at 2.  Plaintiff also alleges that defendants breached the Waiver Agreement by requiring that she undergo additional drug tests after this agreement expired.  *See* Compl. at 9.

With regards to her intentional infliction of emotional distress claim, plaintiff alleges that defendants caused her emotional distress by improperly implementing the Amtrak Drug and Alcohol-Free Workplace Policy.  *See* 2d Suppl. to Compl. at 2 (alleging that failure to provide a second return-to-work drug test "caused me a lot of emotional distress, severe depression and a lot of anxiety.").  Lastly, plaintiff alleges that defendants discriminated against her, upon the basis of race, by, among other things, wrongfully terminating her employment "for [six] weeks due to [Amtrak] breaching its own Drug and Alcohol Policy Agreement of 2017."  *See* Compl. at 7.

The Relevant Agreements

There are several agreements involving plaintiff, SMART and Amtrak that are relevant to plaintiff's claims:

First, plaintiff's employment with Amtrak was governed by a CBA by and between Amtrak and SMART, which provides that the agreement "governs the rates of pay, hours of service and working conditions of all employees."  *See* Dartt Decl. at ¶ 2; *see also* Dartt Decl. Ex. A at 5.  The CBA includes provisions regarding an employee's use or possession of alcoholic beverages, intoxicants, narcotics, and the consequences of this conduct for Union members.  *See* Dartt Decl. Ex. A at 7-10.

Second, the CBA contains two appendices that provide a comprehensive scheme for the resolution of drug testing violations committed by Union members.  *See* Def. Mem. at 6. Specifically, the "Rule G Bypass Agreement" and the "Prevention Program Companion Agreement" are included in the CBA to help prevent the termination of employees for drug and

4

alcohol violations and to encourage compliance with industry-wide drug and alcohol guidelines. *See* Dartt Decl. Ex. A at 11-16.  In this regard, the "Rule G Bypass Agreement" provides guidelines on how to be reinstated after a Union member has been released from service due to a drug test violation.  *See id.* at 11-13.  The "Prevention Program Companion Agreement" provides additional guidance to the Union members on how to pursue reinstatement and the waiver of a Rule G charge, including substance abuse counseling and follow-up drug testing. *See id.* at 14-16.

Lastly, the Waiver Agreement is authorized by the Amtrak Drug and Alcohol-Free Workplace Policy and is governed by the CBA.  *See id.* at 14.  This agreement was executed by Amtrak and SMART to allow plaintiff to be reinstated following her six-week termination.  *See* Compl. Ex. 1 at 3-4.  The Waiver Agreement explicitly refers to the CBA and provides that any further violations of the Amtrak drug testing policy will result in plaintiff's "immediate return to terminated status, waiving all rights under the Collective Bargaining Agreement."  *See id.* at 4.

B.   **Procedural Background**

Plaintiff commenced this action on July 12, 2021.  *See* Compl.  Plaintiff filed supplements to the complaint on October 12, 2021, October 14, 2021, October 15, 2021, November 8, 2021, and November 17, 2021, respectively.  *See generally* Supp. Compl.

On October 12, 2021, plaintiff filed a motion to amend the original demand in the complaint.  *See* Pl. Mot. Amend.  On October 26, 2021, defendants filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), a response in opposition to plaintiff's motion to amend and a memorandum in support thereof.  *See* Def. Mot.; Def. Mem.  On October 28, 2021, plaintiff filed a response in opposition to defendants' motion to dismiss.  *See* Pl. Resp.

On October 29, 2021, November 1, 2021, and November 8, 2021, respectively, plaintiff filed supplements to her response to defendants' motion to dismiss.  *See* Pl. Supp.  On November 11, 2021, defendants filed a reply in support of their motion to dismiss.  *See* Def. Reply.

On January 24, 2022, plaintiff filed a motion for summary judgment, pursuant to Fed. R. Civ. P. 56.  *See* Pl. Mot. Summ. J.  Defendants filed a response in opposition to plaintiff's motion for summary judgment on February 3, 2022.  *See* Def. Resp.

These motions having been fully briefed, the Court resolves the pending motions.

### III.     LEGAL STANDARDS

#### A.     Fed. R. Civ. P. 12(b)(1)

A motion to dismiss for lack of subject-matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), is a challenge to the Court's "competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).  The United States Supreme Court has explained that subject-matter jurisdiction is a "threshold matter" that is "inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1995) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).  And so, an objection that the Court lacks subject-matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

The United States Court of Appeals for the Fourth Circuit has also explained that the plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).  Given this, the Court "regard[s] the pleadings as mere evidence on the issue[] and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment," when deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Id.* (citation omitted).  And so, if a plaintiff "fails to allege facts upon which the court may base jurisdiction," then the Court should grant a motion to dismiss for lack of subject-matter jurisdiction. *Davis*, 367 F. Supp. 2d at 799 (citation omitted).

#### B.     Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir.

2009); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted).  But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet*, 591 F.3d at 255.  And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II, L.P. v. Parker,* 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989)).

    **C.**    **The Railway Labor Act**

The Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 to 181, is intended "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (citation omitted).  The United States Courts of Appeal for the Fourth Circuit has recognized that federal policy favoring arbitration "has special importance in the rail and air industries, where failure to resolve labor disputes in a 'prompt and orderly' manner may 'interrupt[] . . . commerce' and thus adversely affect the public interest in traveling and shipping." *Air Line Pilots Ass'n v. United States Airways Grp.*, 609 F.3d 338, 341 (4th Cir. 2010) (ellipses and brackets in original) (quoting 45 U.S.C. § 151a); *see also Consol. Rail Corp. (Conrail) v. Ry. Labor Exec. Ass'n*, 491 U.S. 299, 310 (1989) ("Referring arbitrable matters to the [National Railroad Adjustment] Board . . . assur[es] that collective-bargaining contracts are enforced by arbitrators who are experts in 'the common law of [the] particular industry.'").

The RLA establishes a mandatory arbitral mechanism for two types of disputes, one of which is a "minor dispute." [4]  *Hawaiian Airlines*, 512 U.S. at 252.  Minor disputes "gro[w] out of . . . the interpretation or application of" a collective bargaining agreement and "involve 'controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.'" *Id*. at 252-53 (citation omitted) (brackets in original).  Courts have recognized that such disputes also "implicate practices, procedures . . . or codes of conduct that are part of the

---

[4] The Fourth Circuit has recognized that railroads and other carriers have "a 'light burden' to establish arbitrability under the RLA."  *See Ry. Labor Execs*. *Ass'n v*. *Chesapeake W*. *Ry*., 915 F.2d 116, 119 (4th Cir. 1990); *see also* C*onnor v. LoveyBug, LLC*, Civil No. 20-425, 2021 WL 2915400, at *6 (E.D. Va. July 12, 2021).

working relationship," and "industry standards, and 'norm[s] that the parties have created but have omitted from the [CBA]'s *explicit* language." *Fry v. Airline Pilots Ass'n Intern.*, 88 F.3d 831, 836 (10th Cir. 1996) (citation omitted) (emphasis in original); *see also Milam v. Herrlin*, 819 F. Supp. 295, 305 (S.D.N.Y. 1993) ("Claims arising out of 'minor' disputes are preempted by the RLA even when it appears that no specific provision of the collective bargaining agreement is directly applicable."). And so, courts have held that the interpretation of a collective bargaining agreement, and the customary procedures used in enforcing it, may be undertaken only by an arbitration board convened under the RLA. *Brown v. Ill. Cent. R. R. Co.*, 254 F.3d 654, 664 (7th Cir. 2001).

### D.     Fed. R. Civ. P. 15

Lastly, Fed. R. Civ. P. 15(a)(2) provides that, when a party cannot amend a pleading by right, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The decision of whether to grant or deny leave to amend is within the discretion of the Court, and the Court "should freely" grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). But, the Court should deny a party leave to amend "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman*, 371 U.S. at 182). An amendment is futile "when the proposed amended complaint fails to state a claim." *Van Leer v. Bank Securities, Inc.*, 479 Fed. App'x 475, 479 (4th Cir. 2012). And so, the Court should deny a motion for leave to amend if "the proposed amendments could not withstand a motion to dismiss." *Cuffee v. Verizon Communications, Inc.*, 755 F. Supp. 2d 672, 677 (D. Md. 2010) (citation omitted).

### IV.    LEGAL ANALYSIS

Defendants have moved to dismiss this matter because, among other things, plaintiff's breach of contract, tort, and Title VII claims are either preempted or precluded by the RLA. *See* Def. Mem. at 9-13. Because defendants raise a threshold jurisdictional issue regarding whether the Court may entertain plaintiff's claims, the Court addresses this issue before considering the other arguments raised in the defendants' motion to dismiss. *See Davis*, 367 F. Supp. 2d at 799

(explaining that a motion to dismiss for lack of subject-matter jurisdiction is a challenge to the Court's "competence or authority to hear the case").

Plaintiff does not directly respond to defendants' argument that her claims are either preempted or precluded by the RLA. *See generally* Pl. Resp. But, plaintiff, nonetheless, argues that the Court should deny defendants' motion and consider her claims. *Id.*

For the reasons that follow, a careful reading of the complaint and the collective bargaining agreement at issue in this case makes clear that plaintiff's breach of contract, tort, and Title VII claims require that the Court interpret the rights within the CBA to resolve these claims. Under such circumstances, the RLA applies and preempts or precludes plaintiff's claims. Because the RLA bars all claims in this case, plaintiff's proposed amendment to the complaint is also futile. And so, the Court: (1) **GRANTS** defendants' motion to dismiss; (2) **DENIES** plaintiff's motion for leave to amend the complaint; (3) **DENIES-as-MOOT** plaintiff's motion for summary judgment; and (4) **DISMISSES** the complaint.

> A.  **Plaintiff's State Law Claims Are Preempted By The RLA**
>
> 1.  **Plaintiff's Breach Of Contract Claims Are Preempted By The RLA**

As an initial matter, defendants persuasively argue that plaintiff's breach of contract claims are preempted by the RLA, because the resolution of these claims would require the Court to interpret the rights and obligations regarding Amtrak's Drug and Alcohol-Free Workplace Policy under the CBA.

The Supreme Court has held that the RLA establishes a "mandatory arbitral mechanism" for minor disputes, which include disputes involving the interpretation or application of a collective bargaining agreement and controversies regarding the meaning of a collective bargaining agreement. *See Hawaiian Airlines*, 512 U.S. at 252-53. And so, courts have held that the interpretation of a collective bargaining agreement, and the customary procedures used in enforcing it, may be undertaken only by an arbitration board convened under the RLA. *See Brown*, 254 F.3d at 664; *see also Clark v. Newport News Shipbuilding and Dry Dock Co.*, 937 F.2d 934, 936-38 (4th Cir. 1991) (holding that the Labor Management Relations Act, another federal labor law with a similar preemption application, preempted the plaintiff's state law claims, because CBA governed the employment relationship); *Connor v. LoveyBug, LLC*, No. 20-425, 2021 WL 2915400, at *8 (E.D. Va. July 12, 2021) (holding that, where a plaintiff alleges

a breach of drug testing policies governed by a CBA, the duty of the employer derives from that agreement and were not "rights and obligations that exist independent of the CBA").

In this case, plaintiff alleges that defendants breached Amtrak's Drug and Alcohol-Free Workplace Policy, by refusing to grant her a second drug test after she failed a return-to-work drug test in 2019, and that defendants also breached the Waiver Agreement by requiring that she undergo additional drug tests after the expiration of this agreement. *See* Compl. at 9. It is undisputed that plaintiff's employment with Amtrak was governed by a collective bargaining agreement. *See* Dartt Decl. at ¶ 2; *see also* Pl. Resp. It is also undisputed that the CBA contains a "Rule G Bypass Agreement" and a "Prevention Program Companion Agreement," which provide a comprehensive scheme for the resolution of drug testing violations committed by plaintiff and other Union members. *See* Def. Mem. at 6; *see also* Pl. Resp.; Dartt Decl. Ex. A at 11-13.

Notably, the "Rule G Bypass Agreement" provides guidelines on how to be reinstated after a Union member has been released from service due to a drug test violation. *See* Dartt Decl. Ex. A at 11-13. The "Prevention Program Companion Agreement" also provides additional guidance to Union members on how to pursue reinstatement and the waiver of a Rule G charge, including substance abuse counseling and follow-up drug testing. *See id*. at 14-16.

The Waiver Agreement, which is also the subject of plaintiff's breach of contract claims, is similarly governed by the CBA. In fact, it is undisputed that the Waiver Agreement is authorized by the "Rule G Bypass Agreement" and the "Prevention Program Companion Agreement." *See* Def. Mem. at 6; Dartt Decl. Ex. B at 24; *see also* Pl. Resp.

Given this, the Court would need to interpret the terms of the CBA to resolve plaintiff's breach of contract claims. And so, these claims are preempted by the RLA and must be dismissed. Fed. R. Civ. P. 12(b)(1) and (6); *see also Brown*, 254 F.3d at 664; *Clark*, 937 F.2d at 937.

### 2. Plaintiff's Tort Claim Is Preempted By The RLA

For similar reasons, plaintiff's tort claim is preempted by the RLA. In the complaint, plaintiff alleges that defendants caused her emotional distress by improperly implementing Amtrak's Drug and Alcohol-Free Workplace Policy. *See* 2d Suppl. to Compl. at 2 (alleging that failure to provide a second return-to-work drug test "caused me a lot of emotional distress, severe depression and a lot of anxiety."). And so, plaintiff's tort claim—like her breach of

10

contract claim—is based upon the rights and obligations under Amtrak's Drug and Alcohol-Free Workplace Policy as set forth in the CBA. *See* Dartt Decl. Ex. A at 11-16; *see also* Dartt Decl. Ex. B at 24.

Because the Court must analyze Amtrak's actions based upon the duties provided within the CBA to resolve plaintiff's tort claim, the RLA preempts this claim. *See Milam v. Herrlin*, 819 F. Supp. 295, 306 (S.D.N.Y. 1993) (holding that plaintiff's tort claim of negligent intentional infliction of emotional distress is preempted by the RLA where the court found that the drug testing procedure was "a critical issue addressed in the collective bargaining process"). And so, plaintiff's tort claim is preempted by the RLA and must also be dismissed. Fed. R. Civ. P. 12(b)(1) and (6).

### 3.     Plaintiff's Title VII Claim Is Precluded By The RLA

To the extent that plaintiff asserts a Title VII claim in this case, the Court also agrees with defendants that this claim is precluded by the RLA.

In *Caldwell v. Norfolk S. Corp.*, the United States District Court for the Western District of North Carolina held that an employment discrimination claim brought pursuant to Title VII was preempted, because the claim involved the interpretation and application of a collective-bargaining agreement. *Caldwell v. Norfolk S. Corp.,* No. 96-443, 1998 WL 1978291, at *5 (W.D.N.C. Mar. 3, 1998). Specifically, the district court found that:

> In order to determine whether Plaintiff has stated a prima facie case of discrimination under Title VII, the Court must determine whether Defendant was required to award the position at issue based solely on seniority, or whether other factors such as relative experience could be considered. As such, Plaintiff's Title VII claim cannot be decided wholly apart from the Collective Bargaining Agreement, does not present purely factual issues which do not require interpretation and application of the Collective Bargaining Agreement, and involves a "minor dispute" as defined by the Act. Accordingly, the Act provides the exclusive means for resolving this dispute and summary judgment is appropriate.

*Id.*; *see also Brown*, 254 F.3d at 664, 668 (holding that "the RLA will not bar a plaintiff from bringing an independent state or federal claim in court unless the claim could be 'conclusively resolved' by the interpretation of a CBA" and that "a claim brought under an independent federal

11

statute is precluded by the RLA only if it can be dispositively resolved through an interpretation of a CBA").

Similarly, here, plaintiff's Title VII claim involves the interpretation and application of the CBA at issue in this case, because plaintiff alleges that defendants discriminated against her by wrongfully terminating her employment under Amtrak's Drug and Alcohol-Free Workplace Policy. *See* Compl. at 7. Given this, plaintiff's employment discrimination claim is not independent of the CBA that governed her employment.[5] And so, the Court must dismiss this claim. Fed. R. 12(b)(1) and (6).

### B.     Leave To Amend The Complaint Is Not Warranted

As a final matter, the Court must deny plaintiff's motion for leave to amend the complaint, because the proposed amendment would be futile. The Fourth Circuit has recognized that amendment to a complaint is futile "when the proposed amended complaint fails to state a claim." *Van Leer*, 479 Fed. App'x at 479. And so, the Court should deny plaintiff's motion for leave to amend the complaint in this case, if "the proposed amendments could not withstand a motion to dismiss." *Cuffee*, 755 F. Supp. 2d at 677 (citation omitted). Here, plaintiff seeks leave to amend the demand in the complaint to change the amount of monetary damages sought in this case. *See* Pl. Mot. Amend. But, as discussed above, plaintiff's claims in this matter are either preempted or precluded by the RLA. Given this, the proposed amendment would be futile. And so, the Court DENIES plaintiff's motion for leave to amend the complaint. Fed. R. Civ. P. 15.

## V.     CONCLUSION

In sum, a careful reading of the complaint makes clear that the RLA preempts or precludes plaintiff's claims in this case. Because the RLA applies to plaintiff's claims, her proposed amendment to the complaint would also be futile.

And so, for the foregoing reasons, the Court:

   1.    **GRANTS** defendants' motion to dismiss;

---

[5] Because the Court concludes that plaintiff's claims are either preempted or precluded by the RLA, the Court does not reach other issues raised in the defendants' motion to dismiss.

    2.      **DENIES** plaintiff's motion for leave to amend the complaint;

    3.      **DENIES-as-MOOT** plaintiff's motion for summary judgment; and

    4.      **DISMISSES** the complaint.

Judgment is entered accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**


                                      s/Lydia Kay Griggsby
                                      LYDIA KAY GRIGGSBY
                                      United States District Judge